DARRELL L. COCHRAN
(darrell@pcvalaw.com)
KEVIN M. HASTINGS
(kevin@pcvalaw.com)
Pfau Cochran Vertetis Amala PLLC
911 Pacific Ave., Ste. 200
Tacoma, WA 98402
Tel: (253) 777-0799

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.T., individually,<br><br>     Plaintiff,<br><br> vs.<br><br>EVERETT SCHOOL DISTRICT, a public corporation; CAROL WHITEHEAD, an individual; CRAIG VERVER, an individual,<br><br>     Defendants | No.<br><br>COMPLAINT FOR DAMAGES<br><br>Demand for Jury Trial |

COMES NOW Plaintiff, by and through her attorneys Darrell L. Cochran and Kevin M. Hastings, and the law firm of Pfau Cochran Vertetis Amala PLLC, to bring a cause of action against the defendant, and allege the following:

## I. PARTIES

1. <u>Plaintiff A.T.</u> Plaintiff A.T. is a sexual abuse victim. At all relevant times, A.T. was a resident of Snohomish County, Washington, where she was repeatedly abused as a minor by Everett School District teacher, Craig Verver.

COMPLAINT FOR DAMAGES

Page 1 of 12

2.  <u>Defendant Everett School District.</u> Defendant Everett School District (the "District") is a public corporation organized under the laws of the State of Washington and is authorized to be sued in such corporate capacity for its acts and those of its agents and employees. The District has its primary place of business at 3900 Broadway, Everett, Washington, Snohomish County, and is subject to the provisions of Title 28A of the Revised Code of Washington. At all times material, the District operated, and otherwise exercised control over, the public schools within the District, for the benefit of the school-aged children residing in Everett School District. The District is responsible for all conduct of its agents and employees with respect to the attendance of A.T. at school in the District. At all relevant times, the District had supervision and control of A.T. in loco parentis. The District also had a duty not to expose students to dangers that they otherwise would not have faced and/or not to increase the risks associated with existing dangers to its students.

3.  <u>Defendant Carol Whitehead.</u> Defendant Carol Whitehead was the District superintendent and a resident of Snohomish County, Washington, at all relevant times. She was familiar with and knowledgeable of Defendant Craig Verver and upon information and belief knew about the sexual relationship with Defendant Verver and A.T. At all times relevant, Defendant Carol Whitehead acted under the color of law. Defendant Whitehead had the authority to take corrective action and had actual notice of wrongdoing under 42 USC § 1983 and yet was deliberately indifferent to the wrongdoing.

4.  <u>Defendant Craig Verver.</u> Defendant Craig Verver was a District teacher and resident of Snohomish County at all times. He groomed minor A.T. for sexual gratification, using his position of power to do so. He then maintained an unlawful sexual relationship with

COMPLAINT FOR DAMAGES

Page 2 of 12

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799 Facsimile: (253) 627-0654

A.T. and frequently had sexual intercourse with her. At all times relevant, Defendant Craig Verver acted under the color of law.

## II.   JURISDICTION AND VENUE

5.   <u>Jurisdiction.</u> Subject matter jurisdiction is predicated on federal question jurisdiction (28 U.S.C. §1331 and § 1343) due to claims under 42 U.S.C. §1983, and supplemental jurisdiction under 28 USC §1367.

6.   <u>Venue.</u> Venue is proper in this district under 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district, in Snohomish County.

## III.   FACTS

7.   <u>Facts; A.T. was Craig Verver's pupil for two years while in high school.</u> A.T. was Craig Verver's pupil in his AP English class during the 2001-2002 school year and during the 2002-2003 school year. She was also Verver's pupil in his Philosophy class during the first semester of the 2002-2003 school year and in his Speech and Debate class during the second semester of the 2002-2003 school year. A.T. also held leadership positions in the National Honor Society, where Verver was the faculty advisor: She was a Cabinet Member in the 2001-2002 school year and then was the President during the 2002-2003 school year. Verver also worked closely with A.T. in planning her Senior Project.

8.   <u>Facts; Carol Whitehead was the District's superintendent at all relevant times</u>. At all relevant times, Carol Whitehead was the District's superintendent. She was familiar with Verver because of his involvement with the annual awarding of the Superintendent Scholar Award. Upon information and belief, she knew about the relationship between Verver and A.T.

COMPLAINT FOR DAMAGES

Page 3 of 12

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

as further explained below. At all times relevant, Defendant Carol Whitehead acted under the color of law. Defendant Whitehead had the authority to take corrective action and had actual notice of wrongdoing under 42 USC § 1983 and yet was deliberately indifferent to the wrongdoing.

9. <u>Facts; Verver began grooming and manipulating A.T. for sexual contact</u>. Beginning right away, Verver made A.T. feel special in his classroom. He teased her a lot in class and gave her excessive attention. He also would promote her as a "scholar" and a potential leader. During the 2001-2002 school year, when A.T. was a Junior, Verver signaled out A.T. and asked her to come by his classroom to talk after school. During that conversation, Verver said that she would need to take "calculated risks" to be exceptional and extraordinary to stand out for college admissions. A.T. was only 16-years-old at the time and she felt really excited that Verver thought she could be exceptional and extraordinary.

10. <u>Facts; Verver began grooming and manipulating A.T. for sexual contact</u>. Throughout the 2001-2002 school year, A.T. was replaying the conversation Verver had with her to be exceptional and extraordinary, and she was looking for things to do to distinguish herself. Verver nominated A.T. for an Outstanding Student award in April 2002, and he hugged her at the ceremony, which made A.T. feel special. Verver steered her towards attending Girl's State in the summer of 2002, and urged her to run for Honor Society President for the following year. It was very obvious that Verver was hand selecting A.T. for the Honor Society President position, which would require working very closely with him as the faculty advisor. The other students who were going to run for the President position dropped out because A.T. was seen as Verver's favorite. A.T. ran unopposed and won. At the end of the 2001-2002 school year,

COMPLAINT FOR DAMAGES

Page 4 of 12

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799 Facsimile: (253) 627-0654

Verver gave A.T. his personal email address and cellular phone number so that they could be in contact over the summer.

11. <u>Facts; Verver began grooming and manipulating A.T. for sexual contact</u>. On October 20, 2002, Verver rapidly escalated his grooming of A.T. for sexual contact. A.T. remembers this day well because it was the day after the Homecoming Dance of her senior year. The Honor Society was responsible for cleaning up the dance afterwards, and Verver kept A.T. for hours after everyone left. He focused the conversation around the "uniqueness" of their relationship, making it very clear that "it's not like he picks some student each year" and that she was just the "one for now." Verver told her that she was an "exact female version of him," only that she would turn out better because of her strong "moral core" and her friends. Verver said that he worried about his role in her life and was envious of her parents because A.T. might leave him after graduation while she would always be her parents' child. Verver also talked about how much he worried about A.T.'s future and who she would become. He took a very protective stance against who A.T. might date or when she might choose to marry. He also told A.T. that he and his wife had been fighting a lot because she really wanted to have kids, but he did not want having children to impact his teaching, but was not sure he was making the right choice. A.T. was completely taken aback by this sudden outpouring of intimate details, but she also felt a feeling of flattery and special attention.

12. <u>Facts; Verver began grooming and manipulating A.T. for sexual contact</u>. About a week or two after the Homecoming Dance, Verver told A.T. that, if she noticed a "little grey cloud hanging over his head," it was because his wife had just told him that she was pregnant. Since she was over 35, they were not going to announce it until the pregnancy had progressed

COMPLAINT FOR DAMAGES

Page 5 of 12

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

to a safe point, so Verver told A.T. to keep it a secret and not tell any of her friends. Verver added that he was crushed about the news.

13. <u>Facts; Verver escalated grooming and made sexual contact with A.T.</u> Verver had done such a comprehensive job grooming A.T. that she began confiding with him about her relationships with boys. During one of these conversations, A.T. told Verver that she felt uncomfortable and unsure about expressing her boundaries. At this point, Verver came over and sat next to her on the couch and said, "Do you feel uncomfortable about me sitting here?" He then put this hand on A.T.'s thigh and asked if her date did that, would be able to tell him no? And Verver asked if she felt uncomfortable, would she be able to tell Verver no?

14. <u>Facts; Verver escalated grooming and manipulating A.T. for sexual contact.</u> A.T. turned 18-years-old on January 5, 2003. Later that month, she stopped by Verver's classroom. He hugged and kissed her at the door and gave her a kiss on the cheek. The next time she saw Verver, he asked A.T. how she had felt about the kiss, and she said that it made her nervous. Verver asked if she had thought that he was going to kiss her on the mouth, and she said, no. Then Verver kissed A.T. on the cheek again, but only after he had hesitated as if he was going to kiss her on the mouth.

15. <u>Facts; Verver escalated his sexual contact with A.T.</u> At the end of January 2003, A.T. was in his classroom on a weekend, and Verver said, "You look cold." He brought her a blanket and said, "I'm going to steal a kiss" and then kissed her on the mouth. A.T. was very upset, and her mouth kept quivering, and she felt like there was a big misunderstanding. She felt very confused and betrayed. He then came around and said, "I'm going to steal another kiss" and he did. Then he suggested that they move to the couch, which A.T. numbly did. Verver kissed her heavily with his tongue and tried to put his hands up her shirt. She felt

COMPLAINT FOR DAMAGES

Page 6 of 12

PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

powerless and scared about making him angry.  When she got home later that day, she hid in the closet and cried uncontrollably.  She considered switching out of Verver's class, but she was too afraid of the potential repercussions.  The following school day, Verver pulled A.T. aside and asked her to come by before school to discuss what happened.  He said it could never happen again, but then he pulled her in and kissed her hard.  He said, "Well, we both knew we couldn't help ourselves."

16. <u>Facts; Verver escalated his sexual contact with A.T. and took her virginity</u>. Moving forward from January 2003, the physical encounters consistently escalated in intensity and intimacy.  He would tell A.T. what to do, but she was so inexperienced and naïve that she often did not know what he meant.  He expressed a lot of enthusiasm and pride in teaching her and helping her discover her sexuality, delighting in her virgin status and inexperience while also expressing surprise, because she was "such a natural."  He gleefully threatened that "no one would ever believe you" if she told them, because he's seen as so proper and professional, so this would run so contrary to his reputation.  He built up a romantic narrative of them as thwarted lovers who would always have unfinished business, constantly expressing how tragic their twenty-year age difference was.  Then, on April 26, 2003, when A.T. had come by his classroom on the weekend to gather supplies for an Honor Society car wash for that afternoon, Verver brought out a packet of condoms and asked her to put one on him.  When A.T. hesitated he said, "Do you want me to wear this? Then you put it on me."  She did, and Verver took her virginity.

17. <u>Facts; Verver repeatedly had sexual contact with A.T. on school grounds during 2003</u>.  Verver had sexual intercourse with A.T. in his classroom in various locations: mostly the couch, but also in the faculty restrooms, and in a supplies/storage space near the front office.

COMPLAINT FOR DAMAGES

Page 7 of 12

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

18. <u>Facts; A.T. told Verver that she did not want to continue but Verver manipulated the situation</u>. A.T. told Verver on numerous occasions that she did not want to continue. Verver said he "strangely wasn't upset about cheating on his wife," but that the only thing that upset him was betraying A.T. as a student, and that he was afraid that the day she became a teacher, she would fully realize what he had done and the line that he had crossed and that she would hate him for it.

19. <u>Facts; District agents knew that Verver was having inappropriate levels of contact with A.T</u>. During the 2002-2003 school year, Verver allowed A.T. to eat lunch most days in his classroom and sleep on his couch after school. Other teachers often stopped by his classroom after school and saw her in there frequently. Verver openly encouraged A.T. to visit him at his classroom on weekends if she saw his car parked behind the building when she drove by. Other teachers saw this contact, as well. Many teachers came by the classroom to see Verver after school and on weekends and found his door locked. When Verver unlocked the door and the teachers came in, they saw A.T. hanging out on his couch. Teachers also saw Verver and A.T. leaving school together when Verver gave her rides home.

20. <u>Facts; the District and its agents fell below the standard of care by failing to protect A.T.</u> The District, through its agents, knew or should have known about the sexual grooming and contact that was occurring between A.T. and Verver. The District also failed to establish policies and procedures that would have prevented the inappropriate relationship, driven by Verver's manipulation and grooming, from taking root and then flourishing. The District was charged with protecting A.T., and it fell below the standard of care in doing so by knowingly allowing the relationship between A.T. and Verver to become too close and intimate. Had proper safeguards been put in place, A.T. would not have been subjected to Verver's

COMPLAINT FOR DAMAGES

Page 8 of 12

PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

manipulation and ultimate sexual contact. A.T. has failed a state-law tort claim form and will be amending her complaint for damages to include these state-law violations.

21. <u>Damages.</u> As a proximate result of Defendants' conduct alleged herein, Plaintiff A.T. suffered damages for violations to her constitutional rights, as well as mental anguish and emotional distress.

22. <u>Punitive Damages</u>. Defendants acted with callous and/or deliberate indifference and with reckless disregard of Plaintiff's constitutional rights.

## IV.  CAUSES OF ACTION

### COUNT I
### VIOLATION OF CIVIL RIGHTS
### AS TO WHITEHEAD AND VERVER
### (42 U.S.C. § 1983)

23. <u>Civil Rights Violation.</u> Based on the paragraphs set forth and alleged above, Defendants Verver and Whitehead are liable for compensatory and punitive damages for their creation of an actual, particularized danger that Plaintiff A.T. would be sexually groomed and assaulted Verver, done in deliberately or with deliberate indifference toward the safety and wellbeing of A.T., in conduct that shocked the conscious, including Defendant Verver's intentional sexual battery and Defendant Whitehead's failure to protect the Plaintiff A.T. from sexual abuse and exploitation while she was attending school, and for Defendant Whitehead's deliberate indifference toward identifying Plaintiff A.T. as sexual abuse victims and reporting the abuse to authorities and to the victims' parents, all done in violation of the Ninth and Fourteenth Amendments and 42 USC § 1983.

COMPLAINT FOR DAMAGES

Page 9 of 12

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

**COUNT II**
**VIOLATION OF CIVIL RIGHTS - *MONELL***
**AS TO THE DISTRICT**
**(42 U.S.C. § 1983)**

24. <u>Civil Rights Violation.</u>  Based on the paragraphs set forth and alleged above, the District is liable for compensatory and punitive damages for its actions in failing to promulgate, issue, and enforce appropriate procedures and policies concerning (1) the reporting of known or suspected sexual abuse of A.T., and (2) the safe education of its students that was free from sexual abuse and exploitation, the failure of which was done in deliberate indifference to Plaintiff A.T.'s and other students' wellbeing and safety, as well as for its actions in failing to adequately train, monitor, or supervise its administrators, staff, and teachers to ensure the safety of students free from sexual exploitation, including A.T., all in violation of the Ninth and Fourteenth Amendments and 42 USC § 1983.

**COUNT III**
**VIOLATION OF TITLE IX**
**AS TO DEFENDANT EVERETT SCHOOL DISTRICT**
**(20 U.S.C. § 1681, *et seq*.)**

25. <u>Title IX</u>. Based on the paragraphs set forth and alleged above, the District is liable for compensatory and punitive damages for its actions in creating and/or subjugating Plaintiffs A.T. to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), when the District and its officials had actual knowledge of the sexual assaults of A.T. created by its failure to supervise Defendant Verver and to protect children, and when the District and its officials failed to take immediate, effective remedial steps to resolve the sexual harassment and instead acted with deliberate indifference toward Plaintiff A.T. and other similarly situated students, the result of which was

COMPLAINT FOR DAMAGES

Page 10 of 12

PFAU COCHRAN
VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

to exclude Plaintiff from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

## V.  RESERVATION OF RIGHTS

26. <u>Reservation of Rights.</u> Plaintiff reserves the right to assert additional claims as may be appropriate following further investigation and discovery.  Plaintiff specifically will add a Washington negligence claim once the period for the tort claim runs.

## VI.  JURY DEMAND

27. <u>Jury Demand.</u> Under the Federal Rules of Civil Procedure, Plaintiffs demand that this action be tried before a jury.

## VII.  PRAYER FOR RELIEF

28. <u>Relief.</u> Plaintiff respectfully requests the following relief:

   A.   That the Court award Plaintiff appropriate relief, to include all special and general damages established at trial;

   B.   That the Court impose punitive damages under any provision of law under which punitive damages may be imposed;

   C.   That the Court award costs, reasonable attorneys' fees, and statutory interest under any applicable law or ground in equity, including 42 U.S.C. § 1988 and all other applicable bases for an award of attorneys' fees and litigation costs;

   D.   That the Court award pre-judgment interest on items of special damages;

   E.   That the Court award post-judgment interest;

COMPLIANT FOR DAMAGES

Page 11 of 12



PFAU COCHRAN VERTETIS AMALA
A Professional Limited Liability Company

911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799  Facsimile: (253) 627-0654

F. That the Court award Plaintiff such other, favorable relief as may be available and appropriate under law or at equity; and

G. That the Court enter such other and further relief as the Court may deem just and proper.

RESPECTUFLLY SUBMITTED this 29th day of September, 2016.

By: __/s/ Darrell L. Cochran__
 Plaintiff's Attorney

By: __/s/ Kevin M. Hastings__
 Plaintiff's Attorney

DARRELL L. COCHRAN
WSBA #22851
(darrell@pcvalaw.com)
KEVIN M. HASTINGS
(kevin@pcvalaw.com)
Pfau Cochran Vertetis Amala PLLC
911 Pacific Ave., Ste. 200
Tacoma, WA 98402
Tel: (253) 777-0799                                    4818-9751-1983, v. 3

COMPLAINT FOR DAMAGES

Page 12 of 12



911 Pacific Avenue, Suite 200
Tacoma, WA 98402
Phone: (253) 777-0799 Facsimile: (253) 627-0654