UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A.T.,

                    Plaintiff,

          v.

EVERETT SCHOOL DISTRICT, et
al.,

                    Defendants.

CASE NO. C16-1536JLR

ORDER

## I.   INTRODUCTION

Before the court are Plaintiff A.T.'s motion to amend her complaint (MTA (Dkt.

# 39)), motion to compel Defendant Everett School District ("the District") to supplement

its response to Interrogatory No. 2 (MTC (Dkt. # 41)), and motion to exclude the

District's expert, Dr. Timothy Kahn (MTE (Dkt. # 49)).  The District opposes the

//

//

motions.[1]  (MTA Resp. (Dkt. # 47); MTC Resp. (Dkt. # 45); MTE Resp. (Dkt. # 53).)

The court has considered the motions, the parties' submissions in support of and in

opposition to the motion, the relevant portions of the record, the oral argument of the

parties, and the applicable law.  (*See* 10/24/17 Min. Entry (Dkt. # 55).)  Being fully

advised, the court denies the motion to amend, grants the motion to compel, and grants in

part and denies in part the motion to exclude for the reasons set forth below.

## II.    BACKGROUND

This case involves allegations of sexual misconduct by A.T.'s former high school

teacher, Defendant Craig Verver.  (*See* SAC (Dkt. # 28).)  A.T. alleges that she was Mr.

Verver's high school student at Cascade High School in the District from 2001-2003, and

that she held leadership positions in the National Honor Society, for which Mr. Verver

served as the faculty advisor, and worked closely with Mr. Verver to plan her senior

project.  (*Id.* ¶¶ 1-2, 4, 7, 10.)   She alleges that Mr. Verver "groomed" her for sexual

gratification and then began a sexual relationship with her during her senior year.  (*Id.*

¶¶ 7-17.)  A.T. alleges that she told Mr. Verver "on numerous occasions that she did not

want to continue" the sexual relationship but he "manipulated the situation."  (*Id.* ¶ 18.)

She further alleges that the District and its agents, including Defendant Superintendent

Carol Whitehead, knew Mr. Verver was having inappropriate contact with her and fell

below the standard of care by failing to protect her.  (*Id.* ¶¶ 3, 19-20.)  A.T. asserts claims

against Ms. Whitehead and Mr. Verver under 42 U.S.C. § 1983 for violating her Ninth

---

[1] The other defendants—Carol Whitehead and Craig Verver—have not responded to the
motions.  (*See* Dkt.)  The court refers collectively to the three defendants as "Defendants."

and Fourteenth Amendment rights (*id.* ¶ 25); against the District for the Section 1983

violations pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (*id.* ¶ 26);

against the District for violating Title IX, 20 U.S.C. § 1681, *et seq.* (*id.* ¶ 27); negligence

(*id.* ¶ 28); and negligent infliction of emotional distress (*id.* ¶ 29).  She seeks

compensatory and punitive damages.  (*Id.* ¶¶ 23-24.)

On December 2, 2016, the court issued a scheduling order.  (Sched. Order (Dkt.

# 20).)  The court set December 30, 2016, as the deadline for joining additional parties

and August 30, 2017, as the deadline for amending pleadings.  (*Id.* at 1.)  The case is set

to go to trial on February 26, 2018.  (*Id.*)  A.T. amended her complaint once as of right

(FAC (Dkt. # 7)) and once after the court granted leave to amend in connection with Mr.

Verver's motion to dismiss (2/28/17 Order (Dkt. # 27) at 8; SAC (Dkt. # 28)).  The

parties exchanged expert witness disclosures on September 29, 2017.  (*See* 8/30/17 Order

(Dkt. # 38).)  The District disclosed Dr. Janet Barry and Dr. Timothy Kahn as expert

witnesses.  (*See* Cochran Decl. (Dkt. # 50) ¶ 2, Ex. A ("Barry Rep."); *id.* ¶ 3, Ex. B

("Kahn Rep.").)

On August 9, 2017, A.T. deposed Sarah Kelsey, a Cascade High School teacher.

(Hastings Decl. (Dkt. # 40) ¶ 2.)  During her deposition, Ms. Kelsey testified that a fellow

teacher, Steve Garmanian, told Ms. Kelsey that he had seen Mr. Verver "'caressing'

A.T.'s face in an 'oddly intimate' way while [A.T.] was sitting on [Mr. Verver's] couch

in the early 2000s."  (MTA at 2 (quoting Hastings Decl. ¶ 9, Ex. A ("Kelsey Dep.") at

38:23-39:9).)  Ms. Kelsey further testified that she reported the incident Mr. Garmanian

witnessed to former Cascade High School principal James Dean (Kelsey Dep. at

1   39:10-12), and Mr. Garmanian told her in October 2016 that the school administration

2   never followed up with him (*id.* at 38:24-39:3).

3        On September 28, 2017, A.T. filed two motions.  (*See* MTA; MTC.)  She moves

4   to amend her complaint to add Mr. Dean as a party and a claim for fraudulent

5   concealment against the District for allegedly withholding Mr. Garmanian's report.

6   (MTA at 5-6.)  She also moves to compel the District to supplement its response to

7   Interrogatory No. 2, which A.T. served on April 26, 2017, and the District responded to

8   on June 13, 2017, and supplemented on September 13, 2017.  (MTC at 1; Hastings Decl.

9   ¶¶ 4, 10, Ex. B ("Interrog. Resp."); *see also* 1st Moore Decl. (Dkt. # 46) ¶¶ 3-4.)  On

10  October 12, 2017, A.T. moved to exclude one of the District's expert witnesses, Dr.

11  Kahn.  (*See* MTE at 1.)  The court addresses each of the three motions in turn.

## III.  ANALYSIS

### A.    Motion to Amend

14       A.T. seeks the court's leave to amend her complaint to add Mr. Dean and a claim

15  for fraudulent concealment against the District.[2]  (MTA at 6.)  A.T. argues that good

16  cause exists for amending her complaint because she first learned about Mr. Garmanian's

17  report during the August 9th deposition, the next day requested depositions of Mr. Dean

18  and Mr. Garmanian to confirm Ms. Kelsey's report, and shortly thereafter sent the

---

[2] The parties frame the proposed fraudulent concealment amendment as a claim or cause of action (*see* MTA at 5; MTA Resp. at 5), but fraudulent concealment under federal law is a doctrine that tolls the applicable statute of limitations, *see Hexcel Corp. v. Ienos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012); (*see also* Hastings Decl. ¶ 15, Ex. G ("Prop. TAC") ¶ 34 (invoking the fraudulent concealment doctrine under "federal common law").)

District a letter requesting that it supplement its discovery.  (*Id.* at 5.)  She contends that there is good cause for her delay in seeking amendment because she diligently sought discovery, which led to her uncovering Mr. Dean's alleged involvement and Mr. Garmanian's report.  (*Id.* at 6.)  A.T. also argues that under Federal Rule of Civil Procedure 15(a)(2) justice requires adding Mr. Dean because his "conduct falls squarely within the definition of deliberate indifference, making him personally liable for [A.T.'s] alleged constitutional deprivations."  (*Id.* at 5.)  She further argues that justice requires allowing her to add fraudulent concealment allegations because "upon information and belief, the District withheld [Mr. Garmanian's] report to fraudulently conceal [its] actual notice that [Mr.] Verver was a sexual predator."  (*Id.*)

The District opposes both amendments.  (*See* MTA Resp.)  First, the District argues that there is no good cause for amendment because A.T. knew of the facts underlying her motion three weeks before the deadline to amend pleadings.[3]  (*Id.* at 4.)  The District also contends that allowing A.T. to amend her complaint "will cause an undue delay in litigation" and that the claim for fraudulent concealment is futile.  (*Id.* at 5.)

//

//

//

---

[3] At oral argument, counsel for the District represented that he would withdraw his argument that A.T. does not have good cause for seeking the court's leave at this time.  However, the court independently finds that good cause exists.  *See infra* § III.A.1.

1          1. <u>Good Cause</u>

2          When the deadlines for adding parties and amending pleadings have passed, as is

3  the case here (*see* Sched. Order at 1)[4], a plaintiff may seek amendment only by first

4  showing "good cause" under Federal Rule of Civil Procedure 16(b)(4), *Johnson v.*

5  *Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992); Fed. R. Civ. P.

6  16(b)(4) ("A schedule may be modified only for good cause and with the judge's

7  consent."). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the

8  party seeking the amendment." *Johnson*, 975 F.2d at 609. To show "good cause," a

9  party must show that it could not meet the deadline in the scheduling order despite the

10 party's diligence. *Id.* "Although the existence or degree of prejudice to the party

11 opposing the modification might supply additional reasons to deny a motion, the focus of

12 the inquiry is upon the moving party's reasons for seeking modification." *Id.* If a party

13 shows good cause, it must then also demonstrate that the amendment is proper under

14 Federal Rule of Civil Procedure 15. *See id.* at 608; *MMMT Holdings Corp. v. NSGI*

15 *Holdings, Inc.*, No. C12-1570RSL, 2014 WL 2573290, at *2 (W.D. Wash. June 9, 2014).

16         The court finds good cause for allowing A.T. to seek the court's leave to amend.

17 The court's inquiry turns on whether A.T. was "diligent in discovering the basis for and

18 seeking" to join Mr. Dean and add the fraudulent concealment allegations. *Rain Gutter*

19 *Pros, LLC v. MGP Mfg., LLC*, No. C14-0458RSM, 2015 WL 6030678, at *2 (W.D.

20

21         [4] Both parties characterize the relevant deadline as the August 30th deadline to amend the
complaint. (*See* MTA at 5; MTA Resp. at 4.) However, as the court notes in its recitation of the
background facts, the court's deadline for joining parties—such as Mr. Dean—passed on
22 December 30, 2016. (Sched. Order at 1.)

Wash. Oct. 15, 2015). During Ms. Kelsey's deposition on August 9, 2017, A.T. first learned of Mr. Dean's involvement and the previously undisclosed report of Mr. Verver's conduct. (MTA at 5; Hastings Decl. ¶ 2.) There is no indication that A.T. earlier possessed the evidence that forms the basis for her requested joinder and amendment. (*See* MTA; MTA Resp.) And from the date of the deposition, A.T. took reasonable steps to confirm the involvement and report, including by meeting and conferring with the District regarding the newly discovered information. (*See* Hastings Decl. ¶¶ 2-3, 6-8.) A.T. therefore had good cause for not seeking amendment earlier.

The District argues that A.T. has not shown good cause because she waited three weeks from Ms. Kelsey's deposition to bring the motion (MTA Resp. at 4), although the District's counsel withdrew this contention at oral argument. The court does not find, however, that the three weeks—a relatively short delay between when A.T. learned of Mr. Dean's involvement and the undisclosed report and when she filed the motion to amend—undermines her diligence in the course of litigation. Rather, A.T.'s conduct demonstrates that she pursued corroborating evidence before seeking amendment. *Cf. DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (finding no "unjust delay" where plaintiffs "waited [to move to amend] until they had sufficient evidence of conduct upon which they could base claims of wrongful conduct").

The court thus concludes that A.T. has shown good cause for her delay in seeking to join Mr. Dean and add the fraudulent concealment allegations, and proceeds to analyze whether leave to amend is appropriate.

*//*

2. <u>Leave to Amend</u>

Federal Rule of Civil Procedure 15(a)(2) requires the court to "freely give" leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is "applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *see also DCD Programs*, 833 F.2d at 186. To assess the propriety of a motion for leave to amend, the court assesses five factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the party has previously amended its pleading. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The factors at issue here are prejudice and futility.[5] The court analyzes these factors in the context of the amendments A.T. proposes.

a. *Mr. Dean*

Prejudice is the paramount consideration in evaluating leave to amend and may alone provide a basis for denying leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("[P]rejudice to the opposing party . . . carries the greatest weight."); *Isilon Sys., Inc. v. Twin City Fire Ins. Co.*, No. C10-1392MJP, 2012 WL 503854, at *2 (W.D. Wash. Feb. 15, 2012). The burden is on the party

---

[5] Neither party addresses bad faith, nor does the court find any indication of bad faith here. Accordingly, this factor does not influence the court's analysis. In addition, A.T.'s previous amendments shed little light on whether amendment is now warranted because her first amendment occurred shortly after she filed suit and her second amendment occurred after the court granted leave to specifically address the statute of limitations issue Mr. Verver raised in his motion to dismiss. (*See* 2/28/17 Order at 8.)

opposing amendment to demonstrate that it will be prejudiced by an amendment. *DCD*

*Programs*, 833 F.2d at 187. In this case, the court considers prejudice to both the District

and Mr. Dean from the late amendment. *Id.* ("Amending a complaint to add a party

poses an especially acute threat of prejudice to the entering party," such that "[a]voiding

prejudice to the party to be added [is the court's] major objective.") (first alteration in

original; internal quotation marks omitted). Prejudice means "undue difficulty in

prosecuting a lawsuit as a result of a change in tactics or theories on the part of the other

party." *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 652 (W.D.

Wash. 2015). If an amendment "is proposed late enough so that the opponent would be

required to engage in significant new preparation, the court may deem it prejudicial."

*AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 n.10 (9th Cir. 2006)

(internal quotation marks omitted); *see also Lockheed Martin Corp. v. Networth Sols.,*

*Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (holding that a proposed amendment that would

require reopening discovery or creating a need for additional discovery prejudices the

opposing party).

  Although the District argues in its briefing that leave to amend will cause an undue

delay in litigation that "will certainly require that [the discovery cutoff and dispositive

motions deadline] be extended, and possibly a continuance of the trial date" (MTA Resp.

at 5), the District's counsel represented at oral argument that the District and Ms.

Whitehead would be prepared to proceed with the current trial date regardless of whether

Mr. Dean is joined (*cf.* Reply at 5 ("There is no evidence that adding [Mr.] Dean would

//

do anything to change the current defense strategy by the District and [Ms.] Whitehead.")).

However, the court finds that joining Mr. Dean would prejudice him—something neither of the parties address in their briefing. (*See* MTA; MTA Resp.) Indeed, A.T. argues only that "[m]anifest injustice would result if [she] was not permitted leave to amend the complaint to add him as a defendant given his apparent importance as a defendant in this civil rights lawsuit." (MTA Reply (Dkt. # 51) at 3.) This case is roughly four months away from trial, less than one week away from the discovery cutoff, and one month away from the dispositive motions deadline. (*See* Sched. Order at 1.) If the court permitted Mr. Dean's joinder at this late juncture, he would have no ability to engage in discovery and little time to prepare a dispositive motion or for trial. *See Nash v. Waddington*, No. C04-5161FDB/KLS, 2006 WL 3203715, at *3 (W.D. Wash. Nov. 1, 2006) (denying amendment where adding a new party late in litigation would result in prejudice and require the court to reopen discovery and motions practice); *cf. DCD Programs*, 833 F.2d at 187 (finding no prejudice to newly added defendant because the case was still in discovery with no pending trial date); *Muse Apartments, LLC v. Travelers Cas.*, No. C12-2021RSL, 2014 WL 11997862, at *1 (W.D. Wash. Nov. 12, 2014) ("The deadline for joining additional parties is set very early in the case so that all interested parties have a full and fair opportunity to participate in discovery."). The threat of prejudice is especially acute given the fact that Mr. Dean may face personal liability. (*See* MTA at 5 (asserting that Mr. Dean's "conduct falls squarely within the definition of deliberate indifference, making him personally liable . . . under 42

U.S.C. § 1983.").)  In addition, there is no indication that A.T. cannot otherwise seek

relief against Mr. Dean by bringing a separate lawsuit against him, given his purported

importance in the sexual misconduct she alleges.[6]

Thus, the court concludes that the significant threat of prejudice to Mr. Dean

warrants denying the proposed joinder.

###   b.  *Fraudulent Concealment*

A proposed amendment is futile "if no set of facts can be proved under the

amendment to the pleadings that would constitute a valid and sufficient claim or

defense." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *see also*

*Gamez v. Ryan*, No. CIV 12-00760 PHX RCB MEA, 2012 WL 8015674, at *2 (D. Ariz.

Nov. 21, 2012) (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.

1998) ("A claim in a proposed amended complaint is futile if it would be immediately

subject to dismissal pursuant to Rule 12(b)(6) . . . for failure to state a claim . . . .");

*Nordyke v. King*, 644 F.3d 776, 790 n.12 (9th Cir. 2011).  Courts generally "deny[] a

motion for leave to amend based on futility."  *Green Valley Corp. v. Caldo Oil Co.*,

No. 09–CV–04028–LHK, 2011 WL 1465883, at *6 (N.D. Cal. Apr. 18, 2011)

The fraudulent concealment doctrine permits tolling of the statute of limitations "if

the defendant fraudulently concealed the existence of a cause of action in such a way that

//

---

[6] At oral argument, A.T.'s counsel conceded that there is no reason why A.T. could not bring claims against Mr. Dean in a separate lawsuit, citing only judicial efficiency and statute of limitations issues that are already present in this case.  (*See* 2/28/17 Order.)

the plaintiff, acting as a reasonable person, did not know of its existence."[7] *Hexcel*, 681

F.3d at 1060. To plead fraudulent concealment, the plaintiff must allege that: (1) the

defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have

actual or constructive knowledge of the facts giving rise to her claim; and (3) the plaintiff

acted diligently in trying to uncover the facts giving rise to her claim. *Id.* A plaintiff

must plead fraudulent concealment allegations with particularity. *See Conmar Corp. v.*

*Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir. 1988); Fed. R. Civ. P. 9(b) ("[A] party

must state with particularly the circumstances constituting fraud . . . ."). The particularity

requirement dictates that a plaintiff plead "facts showing [her] lack of constructive

knowledge and [her] diligence." *Thibodeaux v. Teamsters Local 853*, --- F. Supp. 3d ----,

2017 WL 2774365, at *4 (N.D. Cal. June 26, 2017) (citing *Conmar*, 858 F.2d at 502,

505).

The court first notes that the District's futility arguments based on Washington law

(MTA Resp. at 5-6) are inapposite because "[t]he accrual date of a § 1983 cause of action

is a question of federal law that is not resolved by reference to state law," *Wallace v.*

*Kato*, 549 U.S. 384, 388 (2007); *see also Gibson v. United States*, 781 F.2d 1334, 1340

(9th Cir. 1986) (holding that federal equitable tolling doctrines apply to Section 1983

//

---

[7] The court employs federal law because A.T.'s proposed third amended complaint specifically pleads fraudulent concealment under "federal common law." (Prop. TAC ¶ 34.) In the Ninth Circuit, the doctrine of fraudulent concealment is sometimes used interchangeably with the doctrine of equitable estoppel. *See, e.g.*, *Guerrero v. Gates*, 442 F.3d 697, 706-07 (9th Cir. 2006); *Smith v. Kohlweiss, Inc.*, No. C 11-00239 SBA, 2012 WL 1156338, at *5-6 (N.D. Cal. Mar. 30, 2012).

claims); (Prop. TAC ¶ 34 (alleging fraudulent concealment under federal common law)).

Nevertheless, the court finds that A.T.'s proposed amendment is futile as presented.

A.T.'s proposed amendment alleges that the District and Ms. Whitehead "fraudulently concealed and withheld information" about Mr. Verver's alleged sexual misconduct when they "had actual knowledge" of that information. (*Id.* ¶ 23.) She further proposes to allege that those defendants "negligently, recklessly, and/or purposefully concealed the information by systemically quashing all of the significant concerns" about Mr. Verver. (*Id.*) She also asserts that "[t]his concealment of material facts regarding [Mr.] Verver's predatory behaviors . . . prohibited [A.T.] from realizing she had causes of action" against Defendants. (*Id.* ¶ 24.) As stated, A.T.'s proposed amendment fails to allege facts regarding the District and Ms. Whitehead's affirmative acts of fraudulent concealment and to satisfy the particularity requirement for pleading fraud. *See* Fed. R. Civ. P. 9(b); *Guerrero*, 442 F.3d at 707 (stating that the plaintiff "failed to plead with particularity any additional fraudulent behavior on the part of the defendants that would excuse his delay in bringing suit"); *Smith*, 2012 WL 1156338, at *6 ("There are no allegations in the [amended complaint] identifying fraudulent conduct by Defendants upon which Plaintiffs relied that prevented Plaintiffs from filing suit within the limitations period."). Thus, A.T.'s proposed amendment would be "immediately subject to dismissal" and therefore futile. *Gamez*, 2012 WL 8015674, at

//

//

//

*2.  The court therefore denies A.T. leave to amend her complaint to allege fraudulent concealment.[8]

**B.      Motion to Compel**

A.T. also moves to compel the District to further supplement its answer to Interrogatory No. 2, which states:

> Please identify by date any and all complaints, reports or information received by the Everett School District that include concerns of or pertaining to sexually inappropriate behavior by an employee or agent of the District with a student educated in the District from 1990 to present.

(Hastings Decl. ¶ 14, Ex. F.)  The District initially responded to the interrogatory by objecting that "it is overbroad, vague as written, unduly burdensome, and is not proportionate to the needs of this case" and stating that the District was "gathering and reviewing materials and will supplement this answer."  (Interrog. Resp. at 30.)  Several months later, the District supplemented its response through a production of documents. (*See* 1st Moore Decl. ¶ 4, Ex. B ("Supp. Interrog. Resp.") at 6.)

A.T. argues that based on three additional reports of sexually inappropriate behavior of which she has become aware, including the report discussed above, the District's response is inadequate.  (MTC at 3.)  She first argues that Interrogatory No. 2 seeks "highly relevant" and proportional information that "would have a tendency to show . . . that (1) [Mr.] Verver was a danger to students, (2) [Mr.] Verver was a danger to

---

[8] The court acknowledges, however, that the statute of limitations is at issue in this case. (*See, e.g.*, 2/28/17 Order.)  Thus, the court's order is without prejudice to A.T. raising applicable defenses to a statute of limitations argument in response to a potential motion for summary judgment on that issue.

[A.T.], and (3) [the District] was on notice that teachers sexually abusing students was within the realm of foreseeability." (*Id.* at 4-5.) In addition, she contends that reports from after she was a student "would have a tendency to show habit, practice, custom, or trade." (*Id.* at 4.) She further argues that the District's response with a production of documents—*i.e.*, written reports—is inadequate because she has identified at least three reports of alleged sexual misconduct that were not memorialized in writing. (*Id.* at 5-6.) She contends that at a minimum, the court should order the District to supplement its response with those three incidents. (*Id.* at 6.)

The District objects to Interrogatory No. 2 as vague because it is unclear what "sexually inappropriate behavior" means. (MTC Resp. at 4-5.) The District also contends that the interrogatory is unduly burdensome because it requests every instance over a period of 27 years from the District, which currently employs 2,600 employees and has employed many more over that period of time. (*Id.*; 1st Moore Decl. ¶ 8 (The District "employs 2,145 staff members, 366 substitute teachers, and 150 classified substitutes . . . .").) Finally, the District argues that the interrogatory seeks information not proportional to the needs of this case because the unconstitutional policy or practice must have been the moving force behind A.T.'s claims, which makes any information after 2003 outside the scope of her claims. (*Id.* at 6-7.)

1. Discovery Standard

A party may move to compel discovery if the movant has in good faith conferred with the party opposing discovery to obtain the requested discovery without the court's intervention. *See* Fed. R. Civ. P. 37(a)(1). The moving party bears the burden of

demonstrating that the information it seeks is relevant and that the responding party's objections lack merit. *See Bluestone Innovations LLC v. LG Elecs., Inc.*, No. C-13-01770-SI (EDL), 2013 WL 6354419, at *2 (N.D. Cal. Dec. 5, 2013). The party must therefore "inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious." *Adams v. Yates*, No. 1:10-cv-0671-AWI-MJS, 2013 WL 5924983, at *1 (E.D. Cal. Nov. 1, 2013).

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Whether discovery is proportional to the needs of the case hinges on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The court must limit discovery that is not proportional to the needs of the case. *See Fox v. State Farm Ins. Co.*, No. C15-0535RAJ, 2016 WL 304784, at *1 (W.D. Wash. Jan. 26, 2016). The court has "broad discretion to limit" such discovery. *Romero v. Securus Techs., Inc.*, No. 16-cv-1283-JM-MDD, 2017 WL 4621223, at *1 (S.D. Cal. Oct. 16, 2017).

2. Scope of Interrogatory No. 2

The court concludes that the District must supplement its response but narrows the scope of Interrogatory No. 2. The court finds that Interrogatory No. 2 as written is unduly burdensome and not proportional to the needs of the case for two reasons: (1) it

spans a 27-year period and (2) it seeks reports from all District employees without limitation.  Although the court is mindful that to prevail on her *Monell* claim, A.T. must prove the District had a custom or policy ratifying the constitutional violations she alleges, the events of which A.T. complains occurred over a relatively short period of time—from 2001 to 2003.  *See Nehad v. Browder*, No. 15-CV-1386 WQH NLS, 2016 WL 4216719, at *2 (S.D. Cal. Aug. 10, 2016) ("While a party who alleges a *Monell* claim may discover evidence of a policy or custom based on multiple incidents, requests for such discovery should not be overbroad and instead should be appropriately tailored to the allegations of the *Monell* claims.").  Because a plaintiff must demonstrate that a defendant's policy was the "moving force" behind the alleged constitutional violation, *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997), "post[-]incident events may prove that a policy or custom existed pre-incident," *Willis v. Mullins*, No. CV F 04 6542 AWILJO, 2006 WL 302343, at *4 (E.D. Cal. Feb. 8, 2006).  Accordingly, the court orders the District to supplement its response with reports made during a shorter period of time—from 1998 to 2008.  The more limited time period alleviates the burden on the District and takes into account A.T.'s particular *Monell* claim and the fact that both pre-and post-incident events may be relevant to proving that claim.

Further, the parties appear to agree that Interrogatory No. 2 would require the District to seek information from thousands of District employees, which the court concludes is unduly burdensome and not proportional to the needs of the case.  In particular, the burden of contacting thousands of individuals outweighs the likely benefit of the discovery and entails a significant expenditure of resources.  *See* Fed. R. Civ. P.

26(b)(1). To supplement its response to the interrogatory, the District must consult

current and former District and Cascade High School administrators from 1998 to 2008

to determine whether they received any reports of sexually inappropriate behavior by

District employees. However, the District need not inquire of every District employee

during the relevant period whether that employee made a report. By limiting the manner

of the District's inquiry, the court further alleviates the burden Interrogatory No. 2

imposes and ensures that the discovery will be proportional to the needs of the case.

In addition, the court finds it necessary to provide the parties with a common

definition of the phrase "sexually inappropriate behavior" in Interrogatory No. 2. (*See*

MTC Resp. at 5 (stating that "A.T.'s ever-developing definition of 'sexually

inappropriate behavior' remains extremely vague" and "A.T. is seeking any verbal

account, however minor, of an employee making any physical contact with a student, or

an employee having any type of personal communication with a student").) The court

clarifies that the phrase shall mean verbal or physical conduct of a sexual nature by a

District employee towards a student.[9]

Based on the foregoing rulings, the District must supplement its response

accordingly if it has additional information regarding reports—written or verbal—of

sexually inappropriate behavior by District employees towards students. To the extent

that the three reports A.T. identifies in her motions fall within the clarified scope of

_____

[9] At oral argument, A.T. and the District offered their interpretations of the phrase. The court finds those definitions either too broad or too narrow and too complex. Accordingly, the court defines the phrase in a straightforward, common sense manner.

Interrogatory No. 2, the District must include those reports in its supplementation. To

facilitate the District's supplementation, the court extends to November 14, 2017, the

discovery cutoff for Interrogatory No. 2 only.[10]

3.  Sanctions

A.T. also seeks sanctions in connection with her motion. (MTC at 6-7.) She

provides no authority, however, under which she moves for sanctions. (*See generally id.*)

The District does not address this issue in its response. (*See generally* MTC Resp.)

Pursuant to Federal Rule of Civil Procedure 37, if the court grants a motion to

compel, "the court must, after giving an opportunity to be heard, require the

party . . . whose conduct necessitated the motion, the party or attorney advising that

conduct, or both to pay the movant's reasonable expenses incurred in making the motion,

including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The court need not grant fees,

however, where "the opposing party's nondisclosure, response, or objection was

substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(iii). Because the court narrowed the

scope of Interrogatory No. 2, the court finds that the District's objection to Interrogatory

No. 2 as unduly burdensome and disproportionate to the needs of the case was

substantially justified. *See supra* § III.B.2. The court therefore declines to award

attorney's fees in connection with A.T.'s motion.

//

---

[10] The court's brief extension of the discovery cutoff for this single interrogatory does not affect the court's analysis as to whether granting leave to amend would prejudice Mr. Dean. *See supra* § III.A.2.a. Adding Mr. Dean would necessitate a broader and lengthier extension of the discovery cutoff and trial date so that Mr. Dean could meaningfully participate in the suit.

## C.  Motion to Exclude

Pursuant to Local Civil Rule 43(j), A.T. seeks to exclude the testimony of Dr. Timothy Kahn, who the District identifies as an expert witness.  (MTE at 4); Local Rules W.D. Wash. LCR 43(j).  A.T. argues that Dr. Kahn's testimony duplicates the testimony of one of the District's other expert witnesses, Dr. Barry.  (*Id.* at 1-4.)  The District argues that the two witnesses have different areas of expertise and will testify about related but distinct topics.  (*See* MTE Resp. at 1, 3-5.)

Local Civil Rule 43(j) provides that "[e]xcept as otherwise ordered by the court, a party shall not be permitted to call more than one expert witness on any subject."  Local Rules W.D. Wash. LCR 43(j).  Although both experts' opinions reference the District's standard of care during the time period in which the alleged events occurred, the court's review of the two experts' reports reveals that they plan to testify on distinct matters.  Specifically, Dr. Barry's opinions focus primarily on the evolving standard of care regarding staff-student boundaries (Barry Rep. at 12-13), whereas Dr. Kahn's opinions focus primarily on Mr. Verver and A.T.'s behaviors in the context of sexual abuse in schools (Kahn Rep. at 21, 23).  Moreover, Dr. Barry is an expert on school districts and their policies and training (Barry Rep. at 7-8), while Dr. Kahn is a sex offender treatment provider (Kahn Rep. at 22).

Accordingly, the court denies the motion to exclude Dr. Kahn's testimony in its entirety because many of the two experts' opinions are not on the same subjects, even if their ultimate opinions address the standard of care.  However, the court grants the

//

1 motion as to Dr. Kahn's testimony regarding evolving issues of staff-student

2 boundaries—a topic Dr. Barry thoroughly covers—and limits his testimony to sexual

3 abuse behaviors and the detection of those behaviors.

## IV.    CONCLUSION

5       For the foregoing reasons, the court DENIES A.T.'s motion to amend (Dkt. # 39),

6 GRANTS A.T.'s motion to compel (Dkt. # 41) subject to the limitations discussed in this

7 order, and GRANTS in part and DENIES in part A.T.'s motion to exclude (Dkt. # 49).

8       Dated this 25th day of October, 2017.

_____

JAMES L. ROBART
United States District Judge