FILED

DEC 11 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| A. T., individually,<br><br>   Plaintiff-Appellant,<br><br> v.<br><br>EVERETT SCHOOL DISTRICT, a public corporation; et al.,<br><br>   Defendants-Appellees. | No. 18-35033<br><br>D.C. No. 2:16-cv-01536-JLR<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted November 4, 2019
Seattle, Washington

Before: GOULD and NGUYEN, Circuit Judges, and R. COLLINS,** District Judge.

  Plaintiff-Appellant A.T. appeals the district court's order granting summary judgment in favor of the Everett School District. We have jurisdiction under 28 U.S.C. § 1291. Reviewing the grant of summary judgment de novo, *see Gravelet-*

---

  * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

  ** The Honorable Raner C. Collins, United States District Judge for the District of Arizona, sitting by designation.

*Blondin v. Shelton*, 728 F.3d 1086, 1090 (9th Cir. 2013), we affirm.

1.     The district court properly dismissed A.T.'s negligence claim as time barred because A.T. connected her injuries to her teacher's sexual abuse by May 2013, and realized she had a negligence claim against the Everett School District by this time. Therefore, her October 2016 complaint was beyond the three-year statute of limitations. Under Washington statute, an action "for recovery of damages for injury suffered as a result of childhood sexual abuse" must be filed within three years of an event that triggers the commencement of the statute of limitations period. Wash. Rev. Code § 4.16.340. The three-year period begins to run when: (a) the act causing the alleged injury occurred; (b) "the victim discovered or reasonably should have discovered that the injury or condition was caused by said act;" or (c) "the victim discovered that the act caused the injury for which the claim is brought." *Id*. When viewed in the light most favorable to A.T., the record shows that beginning in 2006, A.T. discussed the power differential in her sexual relationship with her high school teacher and the damage that resulted from it. In 2010, A.T. was diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood, and she admitted that she sought counseling for the emotional issues she suffered from her relationship with a "married man." By 2012, she believed the relationship was coercive and acknowledged that her teacher had "groomed" her. She admitted to a counselor that she felt as if she was a

victim, and her relationship caused symptoms of depression, thoughts of self-harm, shame, and fear. While working through what she later perceived as an abusive relationship, she described experiencing anxiety, fear, nervousness, lack of concentration, depression, sleep disturbances, as well as identity and sexuality issues. Counseling was meant to address these "ongoing issues" surrounding her sexual relationship with her teacher.

  A.T.'s statements also show that A.T. knew the Everett School District had a duty to protect her from the teacher's sexual abuse but failed to do so. She was aware that she could and should report the sexual abuse to the Everett School District, and that in doing so the School District would be required to put a stop to the teacher's behavior. A.T. decided not to do so to maintain her privacy. A.T. also knew that the School District had breached its duty to protect her. A.T. admits that she was aware at the time of the abuse that it was common knowledge among the teachers in the School District that there was inappropriate conduct occurring between A.T. and her teacher. In fact, in one incident, another Everett District employee caught A.T. and the teacher in a "compromised position" in the teacher's classroom. Thus, by May 2013, A.T. was aware of the elements necessary for her negligence claim.

  The only evidence A.T. offers to support her contention that she did not realize she had a claim against the School District until she met with an attorney is

her conclusory, self-serving statement. The declaration, which runs counter to the overwhelming weight of the evidence, is insufficient to withstand summary judgment. *See F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). A.T. has not supported the alleged accrual date with evidence outside of her statements; therefore, her claim is distinguishable from other cases in which the Washington courts have found there was a genuine issue of material fact as to the discovery date. *See, e.g., Korst v. McMahon*, 148 P.3d 1081, 1086 (Wash. Ct. App. 2006) (three family members testified victim had not made connection between abuse and injury); *see also Hollmann v. Corcoran*, 949 P.2d 386, 389 (Wash. Ct. App. 1997) (therapist testified that victim had not made causal connection between the sexual abuse and his resulting Post Traumatic Stress Disorder).

2.  Moreover, the district court did not err in deciding A.T.'s claim was time barred because a plain reading of the statute suggests that accrual is based on the discovery of the intentional sexual abuse, not the date the victim realizes the negligent failure to prevent such abuse. *See* Wash. Rev. Code § 4.16.340(1). Courts should interpret statutory language by its plain meaning and construe individual provisions as interrelated. *Hollmann*, 949 P.2d at 391; *Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in careful examination of

the ordinary meaning and the structure of the law itself."). Under a plain reading of Washington Revised Code § 4.16.340, the state statute encompasses *all* cause of actions "based on *intentional* conduct." Wash. Rev. Code § 4.16.340(1) (emphasis added). The statute also includes claims of negligence against individuals who were not the perpetrators of sexual abuse, but who failed to prevent it. *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 985 P.2d 262, 267–68 (Wash. 1999). Yet, accrual is calculated from the "date of discovery of the *last act* by the *same perpetrator* which is *part of a common scheme or plan of sexual abuse* or exploitation." Wash. Rev. Code § 4.16.340(2) (emphasis added). To engage in childhood sexual abuse, the act must constitute a violation of defined statutory sex offenses. *Id*. Negligence is not one of the listed offenses.

A plain reading of the statute indicates that a cause of action accrues when there is an act intended to further a plan of sexual abuse, and all claims arising from the intentional act by the perpetrator—including the negligence claim—must accrue at the time that the victim makes a causal connection between this intentional act and the victim's injury. It is the intentional act of sexual abuse—not the negligent failure to report childhood sexual abuse—which causes the statute of limitations to run on the cause of action against the School District. Because any reasonable jury would conclude that A.T. discovered the causal connection between the teacher's abuse and her injury by May 2013, and the commencement of the limitations period under Wash. Rev. Code § 4.16.340 begins when

the victim discovers the causal connection between the abuse and her injury, A.T.'s claims accrued by May 2013 and her complaint was beyond the three-year statute of limitations and time barred.

3. In addition, the district court properly concluded that A.T.'s claims were untimely because A.T.'s PTSD diagnosis was a quantitative, not qualitative difference from earlier injuries she connected to the sexual abuse, and therefore the statute of limitations did not reset. The three-year statute of limitations may restart if (1) there is an injury that is "qualitatively different" from the injury previously experienced, or (2) the victim did not discover the causal connection of the abuse to the injury until later. *Carollo v. Dahl*, 240 P.3d 1172, 1174 (Wash. Ct. App. 2010). However, a diagnosis is not a separate "injury" under the statute; instead, the "problems associated with" the diagnosis determine whether the harm is qualitatively different. *Id*. at 1175. Despite the subsequent PTSD diagnosis and the alleged alteration in brain chemistry resulting from PTSD, A.T.'s injury is not qualitatively different because the problems associated with the PTSD are the same as before diagnosis–nightmares, anxiety, thoughts of self-harm, depression, concentration difficulties, and hypervigilance. Finally, A.T. does not connect her decision to undergo a mastectomy to the sexual abuse she suffered. A.T.'s mastectomy cannot, therefore, sustain her claim.

**AFFIRMED.**